**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRIAN LUMBUS,                                              Case No. 1:23-cv-196

        Plaintiff,

                                   Hopkins, J.
     v.                                                          Bowman, M.J.

STEVE WEISHAR, et al.,

        Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Brian Lumbus initiated a pro se civil rights lawsuit under 42 U.S.C. § 1983 by filing a Complaint in the Northern District of Ohio.  Plaintiff's Complaint against nine Defendants was transferred to this Court. (*See* Doc. 5). On July 1, 2025, Plaintiff was permitted to proceed in this action with the following individual capacity claims: (1) First Amendment retaliation and harassment claims against Defendants Weishar, Tabor, and Ritz; (2) Eighth Amendment failure to protect claims against Defendants Wagoner, Tabor, and Weishar; and (3) civil conspiracy claims against Weishar, Tabor, and Ritz. (Doc. 45).

This matter is currently before the Court on cross motions for summary judgment (Docs. 46, 47, 48, 49, 52).

For the reasons that follow, the undersigned recommends that Defendants' motion for summary judgment (Doc. 52) be granted and Plaintiff's motions (Doc. 46-49) be denied.

**I.      Standard of Review**

When reviewing a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the

-1-

non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The court determines whether the evidence requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Rule 56(c) provides that the non-movant must "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact, or otherwise "show[ ] that the materials cited" by the moving party do not demonstrate that no disputed issue of material fact exists. Fed.R.Civ.P. 56(c)(1). Thus, the non-moving

party must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita.*, 475 U.S. at 587 (citation omitted).

In general, a plaintiff "cannot rest on the mere allegations of the pleading." *Id.* But a limited exception to that rule applies when a plaintiff files a verified complaint "under penalty of perjury." A verified complaint is considered to be evidence, equivalent to a declaration or affidavit as to any facts asserted based on personal knowledge that would be admissible in evidence, though not as to legal conclusions to be drawn from those facts. *See Healthy Advice Networks, LLC v. Contextmedia, Inc.*, No. 1:12-cv-610-SJD, 2014 WL 5588444, at *4 (S.D. Ohio Nov. 3, 2014). [1]

## II.     Factual Background

Plaintiff alleges that he was retaliated against in connection with an investigation into drug contraband in the Ohio Department of Rehabilitation (ODRC), beginning on or about August 3, 2020 through 2023. According to Plaintiff, Defendants—including investigators at three different ODRC facilities—conspired against him by conducting a malicious, false investigation "designed to secure criminal charges against Plaintiff." (Doc.

---

[1] In this case, Plaintiff's Amended Complaint is signed "pursuant to 28 U.S.C. 1746 . . . under the penalty that the foregoing is true and correct." (Doc. 29 at PageID 634). Plaintiff's verified complaint in this case is equal to a declaration or affidavit as to any facts asserted based on personal knowledge that would be admissible in evidence *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.  1992) (prisoner's similar declaration was "verified within the language of 28 U.S.C. § 1746.").

57 at PageID 1556; Doc. 46 at PageID 825). As detailed below, Plaintiff claims he was subject to false conduct reports, cell searches, tampering with his legal mail, and fabricated evidence. Plaintiff asserts Defendants took these actions in retaliation for his use of the grievance system, in violation of his First Amendment rights. Plaintiff further alleges that Defendants failed to protect him from harm, in violation of his Eighth Amendment Rights.

### A. Grafton Correctional Institution (GCI)

On August 3, 2020, at GCI, Plaintiff claims that he attempted to help a fellow inmate who was intoxicated on "some type of substance" back into his cell so the inmate would not get into trouble. According to Plaintiff, it was alleged that after several inmates consumed the drug contraband they exhibited abnormal behavior and were placed under medical supervision. Plaintiff claims that Defendant GCI Investigator Weishar placed him into administrative segregation later that evening based on camera footage of Plaintiff during the incident. (Doc. 29 at PageID 635).

On August 10, 2020,[2] Plaintiff claims he was interviewed by Weishar and others regarding whether Plaintiff knew who was supplying the inmate population with the drug contraband. According to Plaintiff, he denied any knowledge of the supplier, but was pressured into stating he would act as an informant to avoid a security level increase and be released from segregation. (*Id.* at PageID 636).

On or about March 6, 2021, approximately seven months later and after failing to provide information, Plaintiff claims that he was returned to segregation.

---

[2] The undersigned notes that Plaintiff's claims arising before August 15, 2020—including the events on August 3, 2020 and August 10, 2020—were previously dismissed as being barred by the applicable two year statute of limitations. (*See* Doc. 23 at PageID 569-70; Doc. 45).

Plaintiff claims that on March 11, 2021, Weishar filed a false conduct report against him. The report alleged that on that date Weishar completed an investigation involving the conveyance and distribution of illegal substances into GCI, which was initiated in June 2020 as a result of several drug overdoses that occurred at that time. (Doc. 48 at PageID 986). Although multiple inmates were investigated in connection with the contraband (*see id.* at PageID 954, 968), upon completion of the investigation, Weishar concluded that Plaintiff "is directly responsible for the conveyance and distribution of large amounts of illegal Synthetic Substances or Paper K2 . . . through offender interviews, confidential statements, the Jpay system and Cash App." (*Id.*). The report alleged that Plaintiff used the mail system to convey books with illegal substances sprayed on the pages, and that offenders pay large sums of money to Plaintiff through the Cash App. (*Id.*). In a supplement, Weishar indicated that a March 10, 2021 search of Plaintiff's cell resulted in an arts and craft box containing 5 pieces of paper found to contain an illegal substance. (*Id.* at PageID 987, 988). Weishar further indicated that Plaintiff admitted ownership of the box.

Plaintiff states that the report was false, alleging that no evidence was presented to the Rules Infraction Board (RIB) regarding the positive test result, that he could not have interacted with other inmates during the covid-19 pandemic, and that he never admitted ownership of the box. (Doc. 29 at PageID 639). Plaintiff further claims that Weishar relied on an unreliable confidential informant, who Plaintiff claims "was later discover[ed] to be a mentally ill inmate," (*Id.* at PageID 640).[3] Plaintiff claims that the false

---

[3] The record includes a letter from inmate Demetrius Gott to the Warden. In the letter, dated April 25, 2021—more than a month after the allegedly false conduct report—Gott states that he was interviewed by the investigator and "made up lies" about Plaintiff in order to get away from another inmate to whom Gott owed money. According to Gott, he "used Mr. Lumbus name, because they kept bringing his name up and I was

-5-

conduct report was issued by Weishar "for utilizing the grievance procedure against him." (*Id.* at PageID 641).

On March 14, 2021, Plaintiff filed an informal complaint against Weishar, which was denied. (*See* Doc. 48 at PageID 990-92). As in this action, Plaintiff claimed that Weishar's conduct report(s) against him were falsified and were part of a malicious investigation. (*Id.* at PageID 992). Plaintiff subsequently filed a grievance with institutional inspector Ms. Ware, who denied the grievance on April 14, 2021. (*Id.*). Plaintiff claims that based on "Ms. Ware['s] failure to hold [Weishar] accountable for his actions of misconduct" he had his family contact the Ohio State Highway Patrol regarding Weishar. (*Id.* at PageID 637). Without further factual elaboration, Plaintiff alleges that Weishar "became upset and . . . the continuous methods of retaliation and harassment elevated," apparently including his being strip searched at least on one occasion and subjected to daily cell searches. (*Id.*).

Meanwhile, on March 15, 2021, Petitioner was found guilty of the March 11, 2021 Conduct Report.[4] The RIB recommended a security review and that Plaintiff be transferred to a higher security institution. (*Id.* at PageID 963).

### B. Lebanon Correctional Institution (LeCI)

Plaintiff remained the subject of the ODRC investigation after being transferred to LeCI. On May 18, 2021, Plaintiff alleges that Defendant LeCI Investigator John Tabor continued the "retaliatory and harassing tactics" against him. (*Id.*). Plaintiff claims he was

---

mad Mr. Lumbus would not help me pay or pay the debt for me." (Doc. 48 at PageID 964).

[4] The Disposition of the RIB Board states that the "Investigator's evidence strongly shows that large amounts of money was being transferred to Lumbus's son via Cash App; confidential statements show dealing was occurring; box found in Lumbus' property contained a large amount of synthetic substances." (Doc. 48 at PageID 963).

subjected to a strip and cell search, after which Tabor stated that "this was the type of treatment you get when you write grievances on my staff and for thinking you are some kind of drug king[pin]." (*Id.* at PageID 642). Plaintiff filed an informal complaint against Tabor based on the search of his cell. (Doc. 48 at PageID 982-83). Tabor's supervisor, Warden Harris, subsequently denied the grievance, noting that investigators have the authority to conduct searches and investigate any illegal activities relating to the prison. (*Id.* at PageID 983).

On June 16, 2021, Plaintiff claims that he was taken to Tabor's office and placed on a speakerphone call with Inspector Weishar. According to Plaintiff, Weishar alleged that Plaintiff remained the main source of synthetic substances brought into GCI and threatened him with potential criminal charges. (*Id.* at PageID 643). Plaintiff claims that he signed a pre-written, falsified statement regarding other inmates getting contraband into GCI so that Weishar and Tabor would "end the harassments" and leave him alone. (*Id.* at PageID 644. *See also* Doc. 48 at PageID 984). Although the statement was supposed to be confidential, Plaintiff claims that, approximately one month later, Weishar allowed other inmates to view the statement and/or used it in RIB proceedings. (*Id.* at 644).

On August 5, 2021, Plaintiff received a conduct report for major contraband. The report charged that on July 27, 2021 a package was received at LeCI containing the following: 278 grams of methamphetamine, 15 suboxone strips, and 8 lock blade pocket knives, as well as 23 sim cards, tobacco, approximately one thousand sheets of laced paper, and thirty-three cellphones. (Doc. 49 at PageID 1076). Supplements to the report allege that Plaintiff initially denied knowing the individual on the return address of the

package, Richard Massey, but after he "was presented with intel discovered during phone calls with Massey and other individuals on the street . . . he did self-admit to attempting to have synthetic cocaine and synthetic fentanyl shipped in from China and Russia but denied he was successful." (*Id.* at PageID 1077). A second supplement also alleges that calls between Plaintiff and an individual named Carl "confirm inmate Lumbus has successfully had illegal synthetic drugs shipped in from China and Russia," that Carl uses specialized equipment to spray paper with the synthetic drugs, and—based on "a reliable confidential source"—that Plaintiff was "using names of other inmates to have packages sent to LeCI in their names." (*Id.* at PageID 1078).[5]

Plaintiff claims the conduct report was "a retaliatory tactic to get back at [him]" for filing grievances against Tabor and Weishar. (*Id.* at PageID 646). Plaintiff further alleges that he was informed by another inmate that Tabor tried to get him to write a statement against Plaintiff regarding the package. (*Id.* at PageID 648). According to Plaintiff, he filed an informal complaint against Tabor for harassment, despite Tabor stating that he should "stop wasting [his] ink." (*Id.* at 647). Plaintiff asserts that Inspector Sparks never responded to the informal complaint. On August 10, 2021, Plaintiff claims that he filed another informal complaint against Tabor for terminating his visitation privileges for his son and friend for no valid reason. On August 20, 2021, Plaintiff's informal complaint was denied.[6] (*See* Doc. 49 at PageID 1059-62).

---

[5] The record also includes a LeCI Investigative Report prepared by Tabor, which includes transcribed phone conversations between Plaintiff, Massey, and Carl. (*See* Doc. 52-4 at PageID 1245-52). These phone calls appear to the be the basis of pending federal criminal charges against Plaintiff. (*See* Doc. 46 at PageID 828). As discussed below, Plaintiff has been charged with twenty-five counts of Use of a Communications Facility to Facilitate a Felony Drug Offense, amongst other charges, in the Northen District of Ohio.

[6] In denying the informal complaint, the inspector noted that the individuals were restricted "due to involvement in activities that contradict ODRC's mail and visit policies." (*See* Doc. 21 at PageID 395-96). It

On August 19, 2021, the RIB found Plaintiff guilty of the contraband charges. (Doc. 49 at PageID 1079). Plaintiff unsuccessfully appealed the RIB decision, arguing that the charges were the result of retaliation and harassment. (*Id.* at PageID 1081).  As noted below, Plaintiff was subsequently indicted on charges in the Warren County Court of Common Pleas based on the July 27, 2021 contraband.

Plaintiff was again charged with a major contraband infraction on November 18, 2021. The conduct report alleged that the mailroom received an envelope addressed to Plaintiff from the Law Office of Gregory S. Robey. (*Id.* at PageID 1034). The K-9 unit allegedly indicated on the envelope and a notice of withholding was taken to Plaintiff. According to the report, Plaintiff stated he knew the law office and expected mail; however, the law office informed Tabor that it "did not mail any letters to inmate Lumbus." (*Id.*). The envelope was opened and allegedly discovered to have approximately 45 pages of thick, cotton stock paper, soaked in an unknown substance. (*Id.*). Plaintiff was found guilty by the RIB on November 29, 2021. (*Id.* at PageID 1035).

Plaintiff alleges that Tabor falsely stated "that the K-9 hit on the mail as a harassment tactic to take all [his] incoming mail" and had the falsified conduct report issued against him. (Doc. 29 at PageID 652-53).

Plaintiff further alleges that he was searched, had his phone and address book taken away from him, and issued another false conduct report in the next month. (*See id.* at PageID 654-55).  Plaintiff filed informal complaints alleging that Tabor improperly took

---

appears that Plaintiff's friend—Hammond—was named as a co-defendant in Plaintiff's pending federal criminal case discussed below.

his personal items on November 24, 2021 and December 15, 2021. (Doc. 49 at PageID 1065-68).

In late December, Plaintiff was interviewed by Tabor and another investigator regarding Plaintiff providing information on officers bringing contraband into the prison. Plaintiff claims he refused to provide information and asked the investigators to stop calling him into their office for fear of being labeled as a snitch. (*Id.* at PageID 655).

On or about January 29, 2022, Plaintiff claims he was informed by several inmates that a hit was placed on him. According to Plaintiff, he was told that Defendant C/O Wagoner was "in on it" based on the belief that Plaintiff informed investigators that Wagoner was moving contraband into the institution. (*Id.* at 656). On the same date, Plaintiff claims Wagoner escorted him and his cellmate to the showers. Plaintiff claims he was placed into restraints and taken out on the range, before Wagoner stopped escorting him and walked the opposite way. Plaintiff claims he was then attacked by another inmate for at least two minutes, with constant punching, kicking, and being poked with a sharp object. According to Plaintiff, Wagoner then told the inmate to stop and Plaintiff was taken to medical for undisclosed injuries and was given a wet paper towel to clean himself up. (*Id.* at PageID 657). Plaintiff claims the attack, as well as a February 10, 2022 incident— during which another inmate sprayed him with human body fluids—occurred at the direction of Wagoner. (*Id.* at PageID 658).  Plaintiff indicates that his family called the Ohio State Highway Patrol regarding the incident.

## C. OSP

Plaintiff was transferred to the Ohio State Penitentiary (OSP) on February 16, 2022. (*Id.* at PageID 660-61). Plaintiff claims that Tabor purposefully took his personal

property "as a retaliatory tactic" in the course of the transfer. He further claims a tablet containing a hidden cell phone was placed in his property. According to Plaintiff, he was informed by several inmates that Tabor bragged that he was going to get Plaintiff placed in segregation "based on some phone he knew I had" and that he was going make sure Plaintiff stayed in prison due to contraband. (*Id.* at PageID 664). Plaintiff claims he did not immediately report the hidden cell phone, but waited until his cell was searched on April 14, 2022 to do so. (*Id.* at PageID 663). Plaintiff indicates he was issued a conduct report and the RIB imposed a thirty-day segregation term based on the search. The RIB disposition indicates that the sanction was imposed based on evidence of Plaintiff possessing two sim cards and two cell phones. (*See* Doc. 46 at PageID 869).

Plaintiff claims that Defendant Investigator Ritz continued the "continuous method of needless[] harassment" at OSP. (Doc. 29 at PageID 665).[7] Plaintiff asserts that on February 23, 2023, Ritz had his cell searched and confiscated his personal property. A conduct report issued on that date alleges that the search resulted in a cell phone discovered inside Plaintiff's television. (Doc. 46 at PageID 873). Plaintiff was found guilty by the RIB board, which imposed a 21-day term of restrictive housing. (*Id.* at PageID 872). Plaintiff claims he filed a kite, informal complaint, and grievance in connection with the incident, but claims that Ritz was not held accountable. (Doc. 29 at PageID 666-68).

On May 2, 2023, Plaintiff claims Ritz wrote a false conduct report against him. The report alleged that Plaintiff used the institutional phone system on April 28, 2023 for the

---

[7] Although the factual allegations in the Amended Complaint jump to February 23, 2023, the record includes an October 2022 RIB disposition finding Plaintiff guilty of possession of small pieces of paper identified as K2 by Ritz. (*see* Doc. 46 at PageID 869-70). In response to Defendants' motion for summary judgment, Plaintiff alleges that Ritz charged him with contraband despite not conducting a field or laboratory test to confirm the identity of the contraband. Plaintiff further alleges Ritz conspired with an OSHP trooper "to initiate a false fentanyl investigation" and acted to "frame the plaintiff." (Doc. 57 at PageID 1559).

-11-

furtherance of criminal activity and to intimidate a potential witness in a pending criminal case. (Doc. 46 at PageID 838). Plaintiff claims that he advised his daughter not to speak to law enforcement, after she was questioned in connection with an ongoing investigation with federal agents. (Doc. 29 at PageID 669). With respect to the allegations regarding criminal activity, Plaintiff claims Ritz fabricated the charge in retaliation for telling other inmates to challenge their conduct reports. (*Id.* at PageID 670). Plaintiff filed a grievance and informal complaint in response to the conduct report, which were denied. (*Id.* at PageID 670-71. *See also* Doc. 46 at PageID 842).

On May 11, 2023, the RIB found Plaintiff guilty of the rules infractions. (Doc. 46 at PageID 839). According to Plaintiff, Ritz apologized to him after the RIB hearing, noting "what was going on was above his head" and allegedly showed Plaintiff a text message indicating that Plaintiff had not done anything wrong. (Doc. 29 at PageID 674-76). Plaintiff appealed the RIB conviction, but the guilty determination was affirmed. (*See* Doc. 46 at PageID 840, 843).

### D. Criminal Proceedings

As a result of Defendants' investigations, Plaintiff was criminally charged in both State and Federal court. Plaintiff claims that the investigator Defendants conspired with individuals in the Ohio State Highway Patrol and the Federal Bureau of Investigation to bring the charges against him. (*See* Doc. 57 at PageID 1559).

On June 6, 2022, in the Warren County Court of Common Pleas, Plaintiff was charged with two counts each of Aggravated Trafficking in Drugs and Aggravated Possession of Drugs, as well as one count of Attempted Illegal Conveyance of Drugs of Abuse onto Grounds of a Specified Government Facility and Possessing Criminal Tools.

(*See* Doc. 66 at PageID 1696-1698). On March 22, 2023, Plaintiff entered a guilty plea to one count of Attempted Illegal Conveyance of Drugs of Abuse onto Grounds of a Specified Governmental Facility. (*Id.* at PageID 1701-05).[8]

On November 1, 2023, Plaintiff—with ten co-defendants—was indicted in the United States District Court for the Northern District of Ohio. *See United States v. Lumbus, et al.,* No. 1:23-cv-585 (N.D. Ohio Nov. 1, 2023). The thirty-four count indictment charges Plaintiff with one count of Conspiracy to Possess with Intent to Distribute Controlled Substances, six counts of Possession with Intent to Distribute Controlled Substances, Interstate Travel in Aid of Racketeering, International Money Laundering Conspiracy, and twenty-five counts of Use of a Communications Facility to Facilitate a Felony Drug Offense. The indictment alleges that Plaintiff "directed, from prison, to have kilogram quantities of controlled substances imported from China, Italy, Mexico and other countries to redistributors and customers who were part of the Drug Trafficking Organization ("DTO") in the Northern District of Ohio and other Districts in the United States." The indictment specifies that the twenty-five facilitation counts are based on the use of a telephone on calls spanning from April 8, 2019 through September 24, 2023. Plaintiff's case is currently set for a jury trial on May 4, 2026.[9]

---

[8] As charged in the indictment, this count alleged that Plaintiff "on or about the 27th of July, 2021 . . . did knowingly convey or attempt to convey onto the grounds of a detention facility a drug of abuse." (*Id.*at PageID 1698).

[9] On February 13, 2026, the Court issued an Order for the parties to show cause why this action should not be stayed pending the resolution of Plaintiff's federal criminal charges. (Doc. 63). Although both parties opposed a stay, arguing that the federal charges are not sufficiently related to this action to justify a stay, it appears that the factual allegations underlying the indictment stem directly from Defendants' investigations (*see e.g.* Doc. 46, at PageID 828; 52-4 at PageID 1245-52), which Plaintiff here alleges were malicious and fabricated. The Order was issued based on concerns regarding inconsistent verdicts if both cases should proceed to trial and—if Plaintiff is convicted in the federal criminal case—whether a judgment in his favor in this action would necessarily imply the invalidity of that conviction. *See Heck v. Humphrey*, 523 U.S. 477 (1997)*.* However, because summary judgment should be awarded to Defendants for the reasons stated in

### III.     Motions for Summary Judgment

Plaintiff and Defendants have filed cross motions for summary judgment.  Plaintiff asserts that no genuine issue of material fact exists with respect to any of his claims. (*See* Docs. 46, 47, 48, 49). According to Plaintiff, the record demonstrates as a matter of law that "Weishar fabricated evidence and conspired with Tabor to secure wrongful charges[;] Wagoner failed to protect Plaintiff from known risks and assaults[;] Tabor fabricated contraband reports and tampered with legal mail[; and] Ritz initiated false investigations, fabricated K2 and fentanyl allegations, and confiscated Plaintiff's legal property."  (Doc. 57 at PageID 1560).

Defendants oppose Plaintiff's motions and, as discussed below, move for summary judgment on several grounds.

### A. *Exhaustion of Administrative Remedies*

Defendants move for summary judgment based on their claim that Plaintiff failed to exhaust his administrative remedies with respect to any of his claims for relief. (Doc. 52 at PageID 1202-07; Doc. 60 at PageID 1657-58).

The Prison Litigation Reform Act requires an inmate to exhaust all administrative remedies before filing a federal lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." ). *See also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). In order to properly exhaust administrative remedies, prisoners must "complete the administrative review process in

---

this Report and Recommendation, a stay is not necessary.

accordance with the applicable procedural rules," as defined by the prison grievance process. *Woodford*, 548 U.S. at 88. "[F]ailure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549, U.S. at 204). *See also Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022). This requires defendants to "prove [a plaintiff's failure to exhaust] by a preponderance of the evidence." *Lamb*, 52 F.4th at 292.

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member involved within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5210-9-31(J)(1). Second, if the inmate is dissatisfied with the response to his informal complaint, or the informal complaint process has been waived by failure to respond, he may file a notification of grievance with the inspector of institutional services. Ohio Admin. Code § 5120-9-31(J)(2). The inmate must file a grievance within 14 days from the date of the informal complaint response or waiver of the informal complaint step. *Id*. The inspector of institutional services shall provide a written response within 14 days of receipt of the notification of grievance, and the time to respond may be extended by 14 days with notice to the inmate. *Id*. If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process by filing an appeal with the office of the chief inspector within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(J)(3). The chief inspector shall provide a written response within 30 days of receipt of the appeal, but may waive the filing or response time limits for good cause. *Id*.

-15-

In this case, Defendants claim Plaintiff failed to properly exhaust any of his claims. Defendants argue that although Plaintiff filed informal complaints and grievances with respect to many of his claims, that he failed to appeal any of the decisions to the office of the chief inspector, the third step of the grievance process. (*See* Doc. 52 at PageID 1206-07; Doc. 60 at PageID 1658). In support of the motion, Defendants provide a declaration from ODRC Program Administrator Shane Stevens and a record of Plaintiff's combined grievance histories. (*See* Doc. 52-2, MSJ Exh. D at PageID 1253-55). According to Defendants, the grievance history records conclusively demonstrate that Plaintiff did not properly exhaust.

In response, Plaintiff contends that the record demonstrates that he did in fact exhaust. However, in support of his position, Plaintiff points to several disciplinary appeals, which stem from his RIB convictions and are not part of the relevant grievance process. (*See* Doc. 57 at PageID 1560 (citing Doc. 21 at PageID 389-401)). *See Starner v. Clark*, No. 2:15-cv-2764, 2016 WL 1090977, at *3 (S.D. Ohio Mar. 21, 2016) (Report and Recommendation) (finding that the plaintiff's pursuit of RIB appeals did not negate his exhaustion obligations "simply because the allegations advanced against him in the conduct report are related to some of the allegations that form the bases for the claims he asserts in this action"), *adopted* 2016 WL 1643039 (S.D. Ohio Apr. 26, 2016). *See also Harris v. Battle*, No. 1:12-cv-940, 2013 WL 538920, at *4 (S.D. Ohio Sept. 24, 2013) (explaining that a warden's decision on an appeal of a RIB conviction is "unrelated" to the grievance process and could not be relied upon to excuse failure to comply with the grievance process). Specifically, Plaintiff cites to appeals of his August 19, 2021 (Doc. 21 at PageID 389-92, 389) and November 29, 2021 (*Id.* at PageID 402-04) RIB convictions.

Although Plaintiff raised claims of harassment and retaliation in those appeals, he was advised that such claims would not be addressed and needed to be raised through the administrative grievance procedure. (*Id.* at PageID 392, 298).

Defendants have carried their burden to demonstrate that Plaintiff failed to exhaust his remedies for his claims arising at LeCI and OSP. However with respect to his claims at GCI, the combined grievance history relied upon by Defendants reflects one third-level appeal, filed on April 26, 2021. (*See* Doc. 52 at PageID 1255). The appeal is not in the record before the Court, but appears to correspond to Plaintiff's March 14, 2021 informal complaint and grievance filed with the Warden (alleging retaliation on the part of Weishar). Accordingly, because Defendants have not established the absence of a factual dispute as to whether Plaintiff exhausted his GCI-based claims against Defendant Weishar, Defendants are not entitled to summary judgment on that particular claim for lack of exhaustion.

By contrast, Defendants have put forth uncontroverted evidence that Plaintiff failed to properly exhaust his LeCI and OSP-based claims. The grievance records do not reflect any stage-three appeal filed by Plaintiff at these institutions. With respect to his OSP claims, for example, Plaintiff alleges that he was retaliated against based on incidents occurring on February 23, 2023 (when he claims Ritz searched his cell and confiscated his personal/legal property), October 23, 2022 (when Ritz falsely accused Plaintiff of K2 possession), and on May 2, 2023 (when Ritz filed an alleged false conduct report against him for using the institutional phone system to further criminal activity). Plaintiff filed a kite, informal complaint, and grievance in connection with the February 23, 2023 incident. (*See* Doc. 46 at PageID 829-834, 841). He also filed an informal complaint in response to the

May 2, 2023 conduct report. (*See id.* at PageID 842). In each instance, however, Plaintiff failed to fully exhaust his remedies by appealing through stage three of the required grievance process.[10]

The same is true of Plaintiff's LeCI-based claims. As detailed above, Plaintiff asserts retaliation against by Defendant Tabor on several occasions at LeCI: the May 18, 2021 search upon arriving at LeCI; the August 5, 2021 alleged false conduct report stemming from the July 27, 2021 contraband package; the August 10, 2021 termination of his visiting privileges; the November 18, 2021 alleged false conduct report stemming from the K-9 discovered contraband; and the November/December taking of his personal items. Plaintiff further claims that on January 29, 2022 Wagoner failed to protect him from an attack by another inmate; that Tabor was deliberately indifferent to his safety by repeatedly calling him into his office prior to the attack; and that Weishar violated his Eighth Amendment rights by allowing other inmates to view his confidential statement on or about July 16, 2021. Plaintiff did not file any informal complaint, grievance, or appeal in connection with his failure-to-protect/deliberate indifference claims or the November 18, 2021 alleged false conduct report. And, as with his OSP claims, Plaintiff did not fully

---

[10] Plaintiff filed a Direct Grievance with the Office of the Chief Inspector against Warden Bracy, alleging that Bracy failed to investigate his informal complaint regarding his personal property. The grievance was filed pursuant Ohio Administrative Code 5120–9–31(L), which requires that a grievance against a warden be "filed directly to the office of the chief inspector within thirty calendar days of the event giving rise to the complaint." The Chief inspector denied the grievance, finding no direct involvement on the part of the Warden in the incident and advising Plaintiff that if he is not satisfied with a response to an informal complaint, that he must comply with the grievance process by escalating the complaint to a grievance and, if necessary, to an appeal. (*See* Doc. 46 at PageID 841). Because Plaintiff failed to do so, he failed to exhaust his administrative remedies with respect his claims against Ritz at OSP. *See Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 1281634, at *7 (S.D. Ohio Mar. 26, 2013) (noting that the procedure for filing a grievance against a warden "is distinct from the three-step procedure for pursuing a grievance against other prison employees"). *See also Brooks v. Dillow*, No. 1:15-cv-812, 2016 WL 6493419, at *7 (S.D. Ohio Nov. 2, 2016) (finding that a direct grievance filed against a warden to the chief inspector, "did not serve to simultaneously exhaust the claim against [an officer].").

exhaust any of his LeCI claims through step three of the grievance process.[11] (*See* Doc. 52 at PageID 1255).

Plaintiff claims that he should be excused from the grievance process, arguing that exhaustion is only required for remedies that are available. (Doc. 57 at PageID 1553). According to Plaintiff, Inspector Sparks failed to respond to two of his grievances—one filed in connection with the July 27, 2021 contraband package and another filed in late 2021 concerning his property. (Doc. 29 at PageID 647, 653-54). Plaintiff argued that his inability to utilize the kiosk system while in restrictive housing prevented him from monitoring his grievances and receiving responses. (*See* Doc. 49 at PageID 1037).

Plaintiff is correct to the extent that he contends that inmates need not exhaust unavailable remedies. This includes "(1) a grievance process that 'operates as a simple dead end,' (2) a grievance process that is 'so opaque that it becomes, practically speaking, incapable of use,' or (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Wiley v. Ky. Dep't of Corr.*, No. 19-5368, 2020 WL 12933851, at *2 (6th Cir. Aug. 25, 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). However, "[e]ven if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because [the Sixth

---

[11] Plaintiff filed an informal complaint and grievance in connection with the allegedly retaliatory cell search upon arriving to LeCI on May 18, 2021. (*See* Doc. 48 at PageID 982-83).  He further alleges that he filed an informal complaint in response to the August 5, 2021 major contraband conduct report (*see* Doc. 29 at PageID 647), as well as in response to Tabor taking his legal mail/property (Doc. 49 at PageID 1065-68). With respect to Plaintiff's claim that Tabor fabricated the November 18, 2021 contraband charge against him, Plaintiff did not utilize the grievance process and instead challenged the disciplinary report as containing false allegations and violating his due process rights through the RIB appeal process. (*See* Doc. 29 at PageID 653; Doc. 49 at PageID 1083-84). In each instance, Defendants' evidence that he failed to fully exhaust his administrative remedies through the third step of the grievance process remains uncontested.

Circuit] requires an inmate to make affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022) (internal quotation marks and citation omitted).

In this case, Plaintiff has failed to show that the grievance procedure was unavailable based on Inspector Sparks' failure to respond to his informal complaints or his claim that he did not receive responses to his grievances due to lack of kiosk access while in restrictive housing. This is because Ohio Admin. Code § 5210-9-31(J)(1) states that when an inmate has not received a written response to an informal complaint within the required timelines, "the informal complaint step is automatically waived and the inmate may proceed to step two." *See Lamb*, 52 F.4th at 294 ("even assuming . . . that [Lamb] did not receive a timely response to any informal complaint or that the prison's response was deficient, that merely meant that Lamb could proceed to step two"); *Trouche v. Crabtree*, 814 F.3d 795, 800 (6th Cir. 2016) ("an inmate is statutorily authorized to proceed to step two of Ohio's grievance procedure if he does not receive a response to his informal complaint").[12] Accordingly, Sparks' alleged failure to respond to his informal complaints and lack of kiosk access are insufficient to demonstrate the grievance process was unavailable. *See e.g. Spencer*, 2025 WL81267 at *4-6 (finding that a prisoner failed to show unavailability of the grievance process based on the prison's failure to provide

---

[12] The relevant Ohio Administrative Code provides that an inmate may also proceed to step three where they have not received a disposition of the grievance at stage two. *See Spencer v. Spencer v. Jordan*, No. 1:22-cv-557, 2025 WL81267, at *4-6 (S.D. Ohio Jan. 13, 2025) (finding that the text of Ohio Admin. Code § 5120-9-31(J)(2) belied the plaintiff's argument that he could not proceed to step three of the process because he did not receive a disposition of grievance).

-20-

him with a copy of a disposition in light of the explicit regulatory instruction that he could proceed to the next step of the administrative process).[13]

In any event, Plaintiff has failed to show he made affirmative efforts to comply with the grievance procedure. Although Plaintiff claims lack of access to the kiosk system while in restrictive housing, Plaintiff initiated five informal complaints during this time, including complaints filed on October 7, 2021, November 24, 2021, December 22, 2021, and two on August 20, 2021. (*See* Doc. 49 at PageID 1059-68, Doc. 52-2 at PageID 1255). With respect to the August 20, 2021 informal complaints, for example, Plaintiff filed two paper complaints concerning the termination of Plaintiff's visitation privileges, which were uploaded by Sparks. Plaintiff inquired about the status of the case and was provided with the responses, but he fails to put forth any evidence that he attempted to comply with steps two or three of the grievance process. (*See* Doc. 49 at PageID 1037, 1059-62). Plaintiff similarly makes no showing that he took affirmative efforts, such as inquiring about the status of his pending complaints or proceeding to step two upon not receiving written responses to the remainder of his LeCI grievances or that he was prevented from doing so. *See Spencer*, 2025 WL81267 at *4 (noting the plaintiff's failure to inquire about the status of his grievance in finding no genuine dispute that plaintiff failed to make an affirmative effort to comply with the grievance process) (citing *Napier,* 636 F.3d at 223-24 (collecting cases where the inmate "did *something*" to attempt to satisfy the exhaustion requirement like "contact[ing] prison personnel")). In the absence of a genuine issue of

---

[13] Plaintiff's general allegation the "ODRC grievance process is nothing more than a sham process" or conclusory response that "staff ignored, obstructed, or failed to process further appeals" without any supporting evidence (Doc. 29 at PageID 668; Doc. 57 at PageID 1553) does not change the analysis. *See Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 5573932, at *7 (S.D. Ohio Oct. 24, 2013) ("General allegations of futility are insufficient to show remedies are unavailable") (citing *Napier*, 636 F.3d at 224).

material fact as to whether Plaintiff made affirmative efforts to comply with the grievance process or whether the process was unavailable, Defendants are entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies through stage three of the grievance process.

Having found that Defendants are entitled to summary judgment based on Plaintiff's LeCI and OSP claims for lack of exhaustion, these claims—including Plaintiff's claims against Defendants Tabor, Wagoner, and Ritz—should be dismissed without prejudice. *Bell v. Washington*, No. 22-2132, 2023 WL 6438597, at *4 (6th Cir. Sept. 29, 2023) ("[T]he appropriate disposition of an unexhausted claim under the PRLA is dismissal without prejudice[.]").

### B. First Amendment Retaliation

As referenced above, Plaintiff did administratively exhaust one claim. That claim develops from the allegation that Defendant Weishar at GCI filed a false conduct report on March 11, 2021 in retaliation for filing grievances against him.[14] (*See* Doc. 29 at PageID 641, 681). Plaintiff further alleges that Weishar subsequently ordered repeated cell searches while Plaintiff remained in segregation, despite Plaintiff's claim he was physically unable to receive new contraband at this time. (Doc. 48 at PageID 960). Plaintiff claims that Weishar's conduct—false conduct report, searches, and investigations carried out in conspiracy with Tabor—was undertaken with the express purpose to secure criminal charges against Plaintiff.

---

[14] As noted above, see *supra* n.2, Plaintiff's claims regarding claims arising before August 15, 2020 have been dismissed as time-barred.  This includes Plaintiff's claim that Weishar placed him in segregation based on security footage of the August 3, 2020 incident and "without any drugs recovered." (Doc. 48 at PageID 960).

A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

"[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). "[N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment. Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient")). *See also Speis v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002) (an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory").

### i. RIB Convictions

Defendants first move for summary judgment on Plaintiff's retaliation claims based on his RIB convictions. Defendants support their position with Plaintiff's institutional

conduct history and RIB records. (*See* Doc. 52, Ex. B and C). According to Defendants, Plaintiff's conduct history—including fourteen conduct reports for contraband possession and four reports for unauthorized possession of drugs or intoxicating substances while at the ODRC—demonstrates that Defendants' investigations and other actions were in response to Plaintiff's misconduct, and the RIB convictions for these infractions "checkmates" his retaliation claim. Defendants further contend that Plaintiff's claims are barred by *Heck v. Humphrey*, 523 U.S. 477 (1997) on account of his prison disciplinary proceedings and RIB convictions.

Defendants' position is unavailing. The Sixth Circuit has expressly rejected the so-called checkmate doctrine.[15] *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) ("we cannot reconcile the 'checkmate doctrine' with this Court's First Amendment retaliation case law and we will not adopt a doctrine that would flout this Court's precedent"). *See also Edge v. Erdos*, No. 1:21-cv-532, 2023 WL 6170543, at *3 (S.D. Ohio Sept. 22, 2023) ("the Sixth Circuit rejects the premise that a finding of guilt at a prison misconduct hearing acts as an absolute bar to a First Amendment retaliation claim"). Additionally, *Heck* is not implicated when a retaliation claim is based on a disciplinary conviction that does not impact the length of the prisoner's sentence. *Meeks v. Schofield*, 625 F. App'x 697, 701 (6th Cir. 2015). *See also Muhammad v. Close*, 540 U.S. 749, 754 (2004) (reversing the application of *Heck* to prison disciplinary proceedings "in the absence of any implication going to the fact or duration of any underlying sentence"). Because Defendants have not argued, much less demonstrated, that Plaintiff's disciplinary convictions lengthened his

---

[15] "The 'checkmate doctrine' provides that when a prison body finds that a prisoner has committed 'an actual violation of prison rules' an the 'finding [is] based on some evidence of the violations, the finding essentially checkmates [the] retaliation claim." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994).

sentence, the RIB convictions do not operate as a bar to Plaintiff's retaliation claims. *See, e.g.*, *Lovett v. Barney*, No. 1:15-cv-024, 2017 WL 694208, at *4 (S.D Ohio Feb. 22, 2017) (denying summary judgment upon a lack of showing that disciplinary hearings had an impact on the plaintiff's sentence); *Pullen v. Howard*, No. 2:14-cv-104, 2016 WL 4764897, at *10 (S.D. Ohio Sept. 13, 2016) (same) (Report and Recommendation), *adopted* 2017 WL 44855 (S.D. Ohio Jan 3, 2017).

Defendants are not entitled to summary judgment based on Plaintiff's RIB convictions.

### ii. Causation and Heck

Summary judgment is warranted, however, because Plaintiff has not produced sufficient evidence to create a genuine issue of material fact on the third element of his retaliation claim. This requires Plaintiff to set forth evidence of a causal connection between the protected conduct and the adverse action—"that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeux-X*, 175 F.3d at 394.

Plaintiff claims that Weishar filed a false conduct report on March 11, 2021, which charged Plaintiff with possession, conveyance, and distribution of drug contraband into GCI. (*See* Doc. 48 at 986, 987). According to Plaintiff, Weishar issued the report in retaliation for using the grievance process against him. Specifically, Plaintiff alleges that he filed an informal complaint against Weishar for retaliation and harassment, as well as a subsequent grievance, which was denied by Inspector Ware. (*See* Doc. 29 at PageID 636-37). However, Plaintiff's informal complaints against Weishar were filed on March 14,

2021 *after* the allegedly false conduct report was issued.[16] (*See* Doc. 48 at PageID 990-92). Plaintiff similarly alleges that Weishar became angry and escalated "the continuous methods of retaliation and harassment" after Plaintiff's family contacted the Ohio State Highway Patrol and "after Plaintiff made a documented police report" against him. (Doc. 29 at PageID 637). However, Plaintiff alleges that he had his family contact the OSHP after Ware denied his grievance, which was on April 14, 2021, also after the alleged retaliatory conduct report.[17] (*See* Doc. 29 at PageID 636-37; Doc. 48 at PageID 992). Accordingly, Plaintiff has failed to set forth sufficient evidence to establish a causal connection between the March 11, 2021 allegedly false conduct report and any protected conduct.

The same is true of his allegation that Weishar retaliated against him by subjecting him to searches while in segregation.[18] As an initial matter, Plaintiff includes no factual allegations regarding the allegedly retaliatory searches. (*See* Doc. 29 at PageID 637). Without any "further factual enhancement" Plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[16] Although Plaintiff filed kites and one other grievance prior to March 11, 2021, they were unrelated to Weishar and concerned matters that do not provide a causal connection between the March 11, 2021 conduct report and any protected conduct. (*See* Doc. 48 at PageID 996-1003 (kites and informal grievances regarding Plaintiff's mail, personal items and orders placed by Plaintiff)).

[17] Aside from alleging that he had his family contact the OHSP "base[d] on Ms. Ware's failure to hold the investigator accountable," Plaintiff does not indicate when the OHSP was contacted or when he filed a documented police report. (*See* Doc. 29 at PageID 637). Informal complaint records suggest, contrary to Plaintiff's factual allegations, that his family contacted the OSHP prior to Ware's decision denying his grievance. (*See* Doc. 48 at PageID 994). However, even construing the facts in Plaintiff's favor Plaintiff has failed to provide any evidence that Weishar was motivated by the OSHP complaints or any other protected conduct in issuing the conduct report. And, as set forth below, temporal proximity by itself is insufficient to create a genuine issue of material fact in this case.

[18] The undersigned notes that Plaintiff does not appear to have utilized the grievance process, much less exhausted his remedies, in connection with the searches. (*See* Doc. 52-5 at PageID 1255; Doc. 48 at PageID 989-95). The combined grievance history contains only one informal complaint filed during this time (on April 22, 2021) concerning Plaintiff's security classification. (*See* Doc. 52-2 at PageID 1255).

544, 555-57 (2007); *Harbin*, 420 F.3d at 580. Furthermore, Plaintiff neither contests that Weishar initiated his investigation in 2020—long before the alleged adverse action—nor the fact that he was convicted of the conduct report on March 15, 2021. Aside from the conclusory allegation that Weishar's actions were "plainly retaliatory" (*see* Doc. 48 at PageID 960), Plaintiff provides no evidence to suggest that any search conducted by Weishar at this time was motivated by Plaintiff's protected conduct rather than the result of the investigation or his RIB conviction for contraband. *See e.g., McDougald v. Clagg*, No. 1:18-cv-93, 2021 WL 4548639, at *7 (S.D. Ohio Oct. 5, 2021) (finding that a conclusory allegation of retaliation falls short of the non-moving party's burden on summary judgment to set forth specific facts showing there is a genuine issue for trial). And, standing alone, the temporal proximity between Plaintiff's grievance and the contested searches is insufficient to show a causal connection. *See Patterson v. Godward*, 505 F. App'x 424, 425 (6th Cir. Nov. 9, 2012) (citing *Tuttle v. Metro Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.")). Plaintiff has failed to set forth a genuine issue of material fact with respect to his retaliation claims.

Additionally, as noted above, Plaintiff asserts that Weishar—along with Tabor[19]—fabricated conduct reports and evidence with the express purpose of securing criminal charges against Plaintiff. (*See* Doc. 57 at PageID 1554). According to Plaintiff, their "coordinated misconduct resulted in wrongful charges" filed in the Warren County Court

---

[19] Although the undersigned has recommended that Plaintiff's claims against Tabor be dismissed for failure to exhaust administrative remedies, should a reviewing Court disagree, the undersigned would alternatively recommend dismissal pursuant to *Heck* for the reasons provided below.

of Common Pleas, which lead to Plaintiff's guilty plea and conviction[20] on one count of Attempted Illegal Conveyance of Drugs of Abuse onto Grounds of a Specified Governmental Facility. (*See* Doc. 66 at PageID 1701-05). Plaintiff asserts that the charges were based on entirely fabricated evidence and their alleged malicious investigation. Because a judgment in Plaintiff's favor would undermine the validity of his conviction, and he has not shown that the conviction has been invalidated, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See e.g.*, *Bramscher v. Hermosa Beach Police Dep't.*, No. CV 20-4324, 2020 WL 4819270, at *3 (C.D. Cal. Aug. 19, 2020) (finding that a retaliation claim including falsified evidence, fictitious incident reports, and bad faith investigations, if successful would undermine the validity of the plaintiff's conviction); *Verdin v. Larpenter*, No. 19-12965, 2020 WL 1905287, at *11 (E.D. La. Jan. 27, 2020) (finding a guilty plea to a criminal contraband charge underlying the plaintiff's retaliation claim to be barred by *Heck*).

Accordingly, Defendant Weishar is entitled to summary judgment.

## IV. Conclusion and Recommendations

For the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 52) be **GRANTED** and Plaintiff's motions (Doc. 46-49) be **DENIED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge

---

[20] Although Plaintiff asserts that he pled guilty "solely to resolve the matter expediently, avoid unnecessary transportation, and conserve judicial resources" (Doc. 57 at PageID 1555), "[f]or purposes of *Heck,* a no contest plea is a plea of guilty that constitutes a criminal conviction." *Osborn v. City of Columbus*, No. 2:20-cv-1229, 2022 WL 2159899 (S.D. Ohio June 15, 2022). Furthermore, without making a determination whether *Heck* applies, a judgment in Plaintiff's favor in this matter could also come to undermine the validity of a possible conviction in Plaintiff's pending criminal case in the Northern District of Ohio.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BRIAN LUMBUS,                                    Case No. 1:23-cv-196

        Plaintiff,

                                        Hopkins, J.
     v.                                               Bowman, M.J.

STEVE WEISHAR, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

‼
!
!