**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| BRIAN LUMBUS, | : | |
| *Plaintiff,* | : | Case No. 1:23-cv-196 |
| v. | : | Judge Jeffery P. Hopkins |
| STEVE WEISHAR, *et al.*, | : | |
| *Defendants.* | : | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on the Report and Recommendation ("Report") issued by Chief Magistrate Judge Stephanie K. Bowman on March 31, 2026. Doc. 67. The Magistrate Judge recommends that Defendants' Motion for Summary Judgment (Doc. 52) be **GRANTED** and Plaintiff's Motions for Summary Judgment (Docs. 46, 47, 48, 49) be **DENIED**. Plaintiff has filed Objections, and Defendants have responded thereto. Docs. 68, 69. For the reasons explained below, Plaintiff's Objections are **OVERRULED**, and the Magistrate Judge's Report and Recommendation is **ADOPTED**.

## I.      BACKGROUND

Magistrate Judge Bowman's Report (Doc. 67) provides a thorough and comprehensive factual and procedural account of the background in the case, which the Court incorporates by reference and summarizes only briefly here.

Plaintiff alleges that beginning on or about August 3, 2020 through 2023 he was retaliated against in connection with an investigation conducted by the Ohio Department of Rehabilitation ("ODRC"), over an incident involving drug contraband. Plaintiff alleges that

Defendants—including investigators assigned to three different ODRC facilities—conspired against him by conducting a malicious and false investigation, "designed to secure criminal charges against the Plaintiff." Doc. 57, PageID 1554–56. Specifically, Plaintiff alleges that, in retaliation for using the grievance system, he was subjected to false conduct reports, cell searches, tampering with his mail, and fabricated evidence. *Id.*

According to Plaintiff, on or around August 3, 2020, he was placed into administrative segregation by Defendant Weishar following an incident in which several inmates displayed abnormal behavior from consuming drug contraband. Am. Compl., Doc. 29, PageID 635. A few days later, Plaintiff claims that he was interviewed by Defendant Weishar and other correction officials regarding information he may have possessed about who supplied the drug contraband. *Id.* at PageID 636. After denying having any such knowledge, Plaintiff alleges he was pressured into becoming an informant. *Id.*

Seven months later, Plaintiff claims corrections officials returned him to segregation, and on March 11, 2021, Defendant Weishar filed a conduct report alleging that Plaintiff was directly responsible for the conveyance and distribution of large amounts of illegal Synthetic Substances or Paper K2. Doc. 48, PageID 954, 968. Plaintiff maintains that the report is false and that none of the evidence contained in a box seized from his cell tested positive for an illegal substance. Am. Compl., Doc. 29, PageID 639–40. Further, according to Plaintiff, the confidential informant who made the report to the Rules Infraction Board ("the Board") that Defendant Weishar relied on is an incredible source. *Id.* Lastly, Plaintiff alleges that Defendant Weishar who issued the conduct report did so as retaliation based on Plaintiff's use of the grievance system to complain about Defendant Weishar's false reporting on him. *Id.* at PageID 641.

On March 14, 2021, Plaintiff filed an informal complaint against Defendant Weishar, claiming that the conduct report was falsified. Doc. 48, PageID 990–92. That complaint was ultimately denied. *Id.* at PageID 992. Plaintiff then filed a grievance with institutional inspector Ms. Ware, which was denied, and in a last-ditch effort, Plaintiff had family members contact the Ohio State Highway Patrol regarding Defendant Weishar. Am. Compl., Doc. 29, PageID 637. Upon discovering Plaintiff's actions, Plaintiff claims that Defendant Weishar became "upset" and the harassment and retaliation "elevated." *Id.* Shortly thereafter, the Board found Plaintiff guilty of the March 11, 2021 offenses charged in the conduct report, which resulted in the Board recommending a security review and that Plaintiff be transferred to a higher security institution. Doc. 48, PageID 963. Plaintiff was ultimately transferred to Lebanon Correctional Institution ("LeCI"). Doc. 67, PageID 1711.

Once at LeCI, Plaintiff alleges that the retaliation and harassment continued but this time by Defendant John Tabor. Doc. 48, PageID 959. Again, according to Plaintiff, he was subjected to a strip and cell search, after which Defendant Tabor stated that "this was the type of treatment you get when you write grievances on my staff . . . " Am. Compl., Doc. 29, PageID 642. Plaintiff then filed an informal complaint against Defendant Tabor, which was denied. Doc. 48, PageID 982–83. Plaintiff alleges that he later signed a pre-written, falsified statement regarding other inmates getting contraband into Grafton Correctional Institution ("GCI") so that Defendants Weishar and Tabor would end the harassment. Am. Compl., Doc. 29, PageID 643–44; Doc. 48, PageID 984.

On August 5, 2021, Plaintiff received a conduct report alleging he received a package containing drug contraband, to which he later admitted. Doc. 49, PageID 1076–78. Plaintiff alleges that this conduct report represented another instance of retaliation for filing grievances

against Defendants Weishar and Tabor. Doc. 29, PageID 646. Plaintiff claims that he then filed two informal complaints against Defendant Tabor; one for harassment—which received no response—and the other for terminating his visitation privileges which was denied on August 20, 2021. Doc. 49, PageID 1059–62. Ultimately, the Board found Plaintiff guilty of the contraband charges and his appeal was unsuccessful. Doc. 49, PageID 1079–81.

On November 18, 2021, Plaintiff was again charged with a major contraband infraction after an envelope, purportedly from a law office, was flagged by a K-9 unit and found to contain paper soaked in an unknown substance. *Id.* at PageID 1034–35. Plaintiff alleges that Defendant Tabor falsified the K-9 alert as a harassment tactic to justify confiscating his incoming mail and the issuing of the conduct report. Am. Compl., Doc. 29, PageID 652–53.

Then in November and December 2021, Plaintiff contends that Defendant Tabor improperly confiscated his personal property, including his phone and address book, and issued additional false conduct reports. In response, on November 24 and December 15, 2021, Plaintiff filed informal complaints concerning the alleged improper seizure of his property. Doc. 49, PageID 1065–68.

After his transfer to Ohio State Penitentiary ("OSP"), Plaintiff continued to pursue grievances tied to alleged retaliatory conduct. He claims that Defendant Ritz subjected him to ongoing harassment, including cell searches and confiscation of property. Am. Compl., Doc. 29, PageID 665. Following a February 23, 2023 search that uncovered a cell phone hidden in his television, Plaintiff filed a kite, informal complaint, and grievance, all of which were denied. *Id.* at PageID 666–68; Doc. 46, PageID 872–73.

Plaintiff also challenged a May 2, 2023 conduct report issued by Defendant Ritz. That report accused Plaintiff of using the institutional phone system to further criminal activity and intimidate a witness. Doc. 46, PageID 838. Plaintiff asserts that that charge was also fabricated and made in retaliation for Plaintiff's encouraging other inmates to contest their conduct reports. Plaintiff filed both an informal complaint and a grievance regarding this incident, which were likewise denied. Am. Compl., Doc. 29, PageID 670–71; Doc. 46, PageID 842.

Overall, Plaintiff consistently alleges that prison officials retaliated against him by issuing false conduct reports, improperly confiscating his property, and subjecting him to harassment, and that his related grievances and administrative complaints were denied. After Chief Magistrate Judge Bowman issued a Report and Recommendation on March 31, 2026 (Doc. 67) recommending that Defendant's Motion for Summary Judgment (Doc. 52) be granted, Plaintiff filed this Objection (Doc. 68), and the matter is now ripe for determination.

## II.      STANDARDS OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* § 636(b)(1). Here, the Magistrate Judge has recommended that Defendant's summary judgment motion should be granted and that Plaintiff's summary judgment motions should be denied. Thus, the Court must make a *de novo* determination whether that assessment is correct.

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 8146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

Furthermore, as here, when parties file cross motions for summary judgment, "[e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine

issue of material fact exists and that he or she is entitled to judgment as a matter of law." *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 522 (S. D. Ohio 2020). "The fact that one party fails to satisfy that burden on his or her own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion." *Id*.

## III.   LAW AND ANALYSIS

### A. First Objection: Misapplication of Rule 56

Plaintiff first objects that the Report (Doc. 67) presents the factual background in a way that "materially favors" Defendants. Doc. 68, PageID 1736. Specifically, Plaintiff objects to the Magistrate Judge's characterization because she allegedly treated his version of events as mere "allegations" while "effectively treating" Defendants' version as fact, failed to view Plaintiff's evidence of retaliation, fabrication, and indifference as an ongoing pattern of conduct, and resolved issues of credibility. *Id.*

When the parties file cross-motions for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Fed. Energy Regul. Comm'n*, 501 F. Supp. 3d at 522. Thus, in this case, the facts are construed in favor of Plaintiff when evaluating Defendants' motion, and in favor of Defendants when evaluating Plaintiff's motions. Accordingly, in presenting the factual background in the report, the Magistrate fairly and accurately described Plaintiff's allegations and the sequence of events. Plaintiff's first objection is therefore overruled.

### B. Second Objection: Exhaustion

Plaintiff objects to the Magistrate Judge's application of the exhaustion requirement under the Prison Litigation Reform Act, arguing that Defendants failed to conclusively

establish non-exhaustion and noting that one third-level appeal related to his GCI claims was not included in the record. Doc. 68; Doc. 67, PageID 1722.

As the Report explains, the grievance history submitted by Defendants reflects that Plaintiff did, in fact, pursue a third-level appeal on April 26, 2021, corresponding to his March 14, 2021 informal complaint and subsequent grievance alleging retaliation by Defendant Weishar. Doc. 67, PageID 1722. In light of that record, the Magistrate Judge correctly determined that Defendants failed to demonstrate the absence of a genuine dispute of material fact as to exhaustion on that claim and properly recommended denial of summary judgment on that ground.

The same is not true, however, for Plaintiff's remaining claims arising at LeCI and OSP. As to those claims, the record shows—without contradiction—that Plaintiff did not complete the third step of the grievance process. With respect to OSP, Plaintiff filed an informal complaint and grievance following the February 23, 2023 search of his cell and property confiscation, as well as an informal complaint related to a May 2, 2023 conduct report. Doc. 46, PageID 829–34, 841–42. Plaintiff also submitted a direct grievance to the Office of the Chief Inspector against Warden Bracy pursuant to Ohio Admin. Code § 5120-9-31(L) for failing to investigate Defendant Ritz's seizure of his personal property. Doc. 67, PageID 1723, n.10. Although that grievance was timely filed, it was denied, and Plaintiff was expressly advised of his right to appeal. Doc. 46, PageID 841. He did not do so. Because the direct grievance procedure requires completion of the available appeal to satisfy exhaustion, Plaintiff's failure to pursue that final step is dispositive. *See Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 1281634, at *7 (S.D. Ohio Mar. 26, 2013) (stating that the warden grievance procedure "is distinct from the three-step procedure for pursuing a grievance against other

8

prison employees"); *Brooks v. Dillow*, No. 1:15-cv-812, 2016 WL 6493419, at *7 (S.D. Ohio Nov. 2, 2016) (concluding that a grievance targeting the warden and filed with the chief inspector "did not serve to simultaneously exhaust the claim against [an officer]"). Accordingly, Plaintiff did not exhaust his administrative remedies with respect to his OSP claims.

The same deficiency applies to Plaintiff's LeCI claims. The evidence establishes that Plaintiff did not advance those grievances through the requisite third step of the administrative process. Doc. 52, PageID 1255. On this record, Defendants have satisfied their burden of showing a failure to properly exhaust as to those claims.

## C. Third Objection: Administrative Remedies Were Unavailable

Plaintiff also contends that administrative remedies were not meaningfully available to him. Doc. 68, PageID 1737. While it is true that inmates are not required to exhaust remedies that are effectively unavailable—such as when the process is a dead end, is functionally unusable, or is thwarted by prison officials—the record does not support such a finding here. *See Wiley v. Ky. Dep't of Corr.*, No. 19-5368, 2020 WL 12933851, at *2 (6th Cir. Aug. 25, 2020).

Even assuming Plaintiff did not receive responses to certain informal complaints or experienced limited kiosk access while in restrictive housing, those circumstances did not foreclose his ability to proceed through the grievance process. Ohio's grievance regulations expressly permit an inmate to advance to the next step when a response is not received within the prescribed time. *See* Ohio Admin. Code § 5120-9-31(J). Thus, the absence of a response does not render the process unavailable; it triggers the inmate's ability to continue.

Moreover, the record reflects that Plaintiff was able to file multiple informal complaints during the relevant period, including while in restrictive housing, which undermines his claim that the process was inaccessible. Doc. 49, PageID 1059–60; Doc. 52-5, PageID 1255. Yet he has not shown that he attempted to pursue the next steps, inquired about the status of his filings, or was prevented from doing so. General assertions that the grievance system was ineffective or obstructed, without supporting evidence, are insufficient to excuse compliance.

In these circumstances, Plaintiff has not demonstrated that administrative remedies were unavailable or that he made the affirmative efforts required to satisfy the Prison Litigation Reform Act. Accordingly, the Magistrate Judge correctly concluded that Defendants are entitled to summary judgment on the unexhausted claims.

### D. Fourth Objection: First Amendment Retaliation

The Court agrees that Plaintiff exhausted administrative remedies as to a single retaliation claim arising from the March 11, 2021 conduct report issued by Defendant Weishar. Plaintiff alleges, however, that the report was false and issued in retaliation for his use of the grievance process, and that subsequent searches and investigative actions, allegedly undertaken with Defendant Tabor, were part of a broader effort to build a criminal case against him.

To establish retaliation, Plaintiff must show that (1) he engaged in protected conduct, (2) he suffered an adverse action that "would deter a [person] of ordinary firmness from continuing to engage in that conduct," and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Conclusory assertions of

10

retaliatory motive are insufficient; rather, a plaintiff must point to specific facts from which a retaliatory inference may reasonably be drawn. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005).

Defendants argue that Plaintiff's disciplinary convictions foreclose his retaliation claim. That argument is not well taken. The Sixth Circuit has rejected the so-called "checkmate doctrine," under which a misconduct conviction automatically defeats a retaliation claim. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018). Nor does *Heck v. Humphrey*, 512 U.S. 477 (1994) bar a retaliation claim premised on prison disciplinary proceedings unless the challenged action affects the duration of the plaintiff's sentence. *See Muhammad v. Close*, 540 U.S. 749, 754 (2004); *Meeks v. Schofield*, 625 F. App'x 697, 701 (6th Cir. 2015). Because there is no showing that Plaintiff's disciplinary convictions lengthened his sentence, those convictions do not, standing alone, preclude this claim.

Even so, summary judgment is appropriate because Plaintiff has not produced evidence sufficient to create a genuine dispute of fact relative to the causation element. The record does not support a reasonable inference that the March 11, 2021 conduct report was motivated by protected activity. Plaintiff's own filings indicate that his complaints against Defendant Weishar were made *after* the conduct report was issued, which defeats any causal link. Doc. 48, PageID 986–87, 990–92. Likewise, allegations that Plaintiff's family contacted law enforcement or that additional complaints were made occurred only after the report. Am. Compl., Doc. 29, PageID 636–37; Doc. 48, PageID 992. On this record, no reasonable jury could conclude that protected conduct preceded and motivated the challenged action.

11

## IV.    CONCLUSION

Having reviewed *de novo* the Magistrate Judge's Report and Recommendation (Doc. 67), the Court adopts it and overrules Plaintiff's Objections (Doc. 68). Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 52), and **DENIES** Plaintiff's Motions for Summary Judgment (Docs. 46, 47, 48, 49). The Court **ORDERS** the Clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

July 15, 2026

Jeffery P. Hopkins
United States District Judge